UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
5-28-15
MAY 28 2015
Judge Gary Feinerman
United States District Court

UNITED STATES OF AMERICA,    )
                             )
v.                           )   No. 14 CR 537
                             )
BRIAN HOWARD                 )

## PLEA AGREEMENT

1.  This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant BRIAN HOWARD and his attorney, RONALD SAFER, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.  The Information in this case charges defendant with willfully setting fire to, damaging, destroying, and disabling an air navigation facility, in violation of Title 18, United States Code, Section 32(a)(3) (Count One); and using fire to commit a felony which may be prosecuted in a court of the United States, namely willfully setting fire to, damaging, destroying, and disabling an air navigation facility as charged in Count One of the Information, in violation of Title 18, United States Code, Section 844(h) (Count Two).

3.  Defendant has read the charges against him contained in the Information, and those charges have been fully explained to him by his attorney.

1

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the Information:

    a. Count One: willfully setting fire to, damaging, destroying, or disabling an air navigation facility, namely the Chicago Air Route Traffic Control Center, or willfully interfering by force or violence with the operation of that facility, if such fire, damaging, destroying, disabling, or interfering is likely to endanger the safety of an aircraft in the special aircraft jurisdiction of the United States or any civil aircraft used, operated, or employed in interstate, overseas, or foreign air commerce, in violation of Title 18, United States Code, Section 32(a)(3); and

    b. Count Two: using fire to commit a felony which may be prosecuted in a court of the United States, namely willfully setting fire to, damaging, destroying, or disabling an air navigation facility in violation of Title 18, United States Code, Section 32(a)(3), as charged in Count One of the Information, in violation of Title 18, United States Code, Section 844(h).

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One and Two of the Information. In pleading guilty, defendant

admits the following facts and that those facts establish his guilt beyond a reasonable doubt.

On or about September 26, 2014, at Aurora, in the Northern District of Illinois, Eastern Division, defendant BRIAN HOWARD willfully set fire to, damaged, destroyed, and disabled an air navigation facility, namely the Chicago Air Route Traffic Control Center, and willfully interfered by force and violence with the operation of that facility, likely endangering the safety of aircraft in the special aircraft jurisdiction of the United States or any civil aircraft used, operated, or employed in interstate, overseas, or foreign air commerce, in violation of Title 18, United States Code, Section 32(a)(3).

In addition, on or about September 26, 2014, at Aurora, Illinois, in the Northern District of Illinois, Eastern Division, defendant used fire to commit a felony which may be prosecuted in a court of the United States, namely willfully setting fire to, damaging, destroying, and disabling an air navigation facility, and willfully interfering by force and violence with the operation of such a facility, in violation of Title 18, United States Code, Section 844(h).

Specifically, the Chicago Air Route Traffic Control Center (the "Control Center") is an FAA-owned, access-controlled facility located in Aurora, Illinois. The Control Center is an "en route facility" responsible for safely guiding airplanes at higher altitudes across its geographic territory. The Control Center's geographic

territory included the air space over parts of Illinois, Indiana, Iowa, Wisconsin, and Michigan.

On September 26, 2014, defendant was employed by an FAA contractor as a Lead Aerospace Engineer. In this capacity, and in his predecessor roles, defendant worked on telecommunications matters at the Control Center and at other FAA facilities for approximately eight years. Defendant had specialized knowledge regarding the Control Center's telecommunications infrastructure, and was often his employer's lead troubleshooter for telecommunications issues affecting FAA air navigation facilities. Defendant was responsible for maintaining the federal telecommunications infrastructure at the Control Center, as well as at other FAA facilities.

On September 26, 2014, at approximately 5:00 a.m., defendant entered the Control Center using his FAA-issued credentials. He was carrying a gasoline can filled with gasoline, a lighter, a towel, and multiple knives. Defendant proceeded with these materials to the Control Center's basement, where defendant also had access to wire cutters. Defendant entered an area of the Control Center's basement where key components of the Control Center's telecommunications infrastructure were located. As a result of his position as a Lead Aerospace Engineer, defendant was among a subset of Control Center employees authorized to access this area of the facility.

Using knowledge he had gained through his position as Lead Aerospace Engineer, defendant intentionally damaged and disabled telecommunication components at the Control Center that he knew would disrupt its operations and effectively shut down the Control Center. Using the wire cutters, defendant intentionally severed multiple telecommunications cables that enabled the Control Center to communicate with the outside world and with other FAA facilities. Defendant then used the towel and gasoline he had brought into the Control Center to set fire to the area which housed these key components, causing further damage.

Defendant understood that by severing the Control Center's telecommunications cables and setting fire to its telecommunications equipment, he increased the risk to aircraft traveling through the Control Center's air space. Defendant's conduct disabled the Control Center's ability to communicate with critical data systems, personnel, in-flight aircraft, and other FAA facilities that the Control Center relied on to safely guide aircraft traveling through its geographic territory. Defendant knew that air traffic controllers in the Control Center would be unable to communicate with aircraft that were in the air, or to use radar technology to assist aircraft in safely navigating through the Control Center's air space.

### Maximum Statutory Penalties

7. Defendant understands and agrees that the charges to which he is pleading guilty carry the following statutory penalties:

a. Count One carries a maximum sentence of 20 years' imprisonment. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation on this count. Count One also carries a maximum fine of $250,000 or twice the gross loss resulting from the offense, whichever is greater. Defendant further understands that with respect to Count One the judge must impose a term of supervised release of not more than three years.

b. Count Two carries a mandatory term of imprisonment of 10 years. The sentence of imprisonment for Count Two is required to be consecutive to any other term of imprisonment imposed on the defendant. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation on this count. Count Two also carries a maximum fine of $250,000 or twice the gross loss resulting from the offense, whichever is greater. Defendant further understands that with respect to Count Two the judge must impose a term of supervised release of not more than three years.

8. Defendant further understands that the Court must order restitution to victims of the offenses in an amount determined by the Court.

9. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

10. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

11. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points, except as specified below:

    a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2014 Guidelines Manual.

    b. **Offense Level Calculations**

    **Count One**

        i. It is the government's position that the base offense level for the charge in Count One is 30, pursuant to Guideline § 2A5.2(a)(1), because the offense involved intentionally endangering the safety of aircraft or a mass transportation facility. It is the defendant's position that the base offense level is 18, pursuant to Guideline § 2A5.2(a)(2), because the offense involved recklessly endangering the safety of aircraft or a mass transportation facility.

    ii.  Pursuant to Guideline § 3B1.3, the base offense level is increased by 2 because the defendant abused a position of public trust and used a special skill in a manner that significantly facilitated the commission of the offense.

**Count Two**

    i.  Pursuant to Guideline § 2K2.4(a), the guideline sentence for the charge in Count Two is the minimum term of imprisonment required by Title 18, United States Code, Section 844(h), namely ten years of imprisonment, which is required to be consecutive to any other term of imprisonment imposed on defendant.

**Combined Offense Level**

    i.  Count Two does not group with any other Count pursuant to Guideline § 3D1.1(b)(1).

**Acceptance of Responsibility**

    i.  Defendant has demonstrated a recognition and affirmative acceptance of responsibility for his conduct. The offense level is decreased by 2 levels, pursuant to Guideline § 3E1.1(a).

    ii.  In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant

is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

    c.    **Criminal History Category.** With regard to determining the defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero, and defendant has a criminal history category of I.

    d.    **Anticipated Advisory Sentencing Guidelines Range.** Based on the facts now known to the government, it is the government's position that the anticipated offense level for the charge in Count One is 29, which, when combined with a criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 87-108 months, in addition to any supervised release, fines, and restitution the Court may impose. It is the defendant's position that the anticipated offense level for the charge in Count One is 17, which, when combined with a criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 24-30 months, in addition to any supervised release, fines, and restitution the Court may impose.

    e.    With respect to Count Two, defendant is subject to a term of imprisonment of 120 months' imprisonment, which is required to be imposed consecutively to any other term of imprisonment imposed on the defendant.

    f.    Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-

binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation, that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations and defendant shall not have a right to withdraw his plea on the basis of the Courts rejection of these calculations.

12. Both parties expressly acknowledge that this plea agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Officer or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

13. Each party is free to recommend whatever sentence it deems appropriate.

14. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

15. Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make full restitution to victims in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing.

16. Restitution shall be due immediately, and paid pursuant to a schedule set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

17. Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

18. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code,

Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

### Acknowledgments and Waivers Regarding Plea of Guilty

19. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in Case No. 14 CR 537.

20. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

21. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Right to be charged by indictment.** Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert

at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

  b.  **Waiver of Trial Rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

    i.  The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

    ii.  If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

    iii.  If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the information separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

    iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

    v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

    vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

    vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

   c. **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

22. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights

### Presentence Investigation Report/Post-Sentence Supervision

23. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

24. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

25. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

26. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

27. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

### Conclusion

28.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

29.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

30.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

31. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

32. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 5/28/15

_____  
ZACHARY T. FARDON  
United States Attorney

_____  
ANDREW K. POLOVIN  
Assistant U.S. Attorney

_____  
BRIAN HOWARD  
Defendant

_____  
RONALD SAFER  
Attorney for Defendant